UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES A. BOYD,

                                    Plaintiff,

        v.

RICHARD MORGAN and RON VAN
BOENING,

                                    Defendants.

No. C09-1784 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  July 8, 2011**

        Presently before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 43), Defendants' Response and Motion to Strike (ECF No. 46), and Defendants' Cross-Motion for Summary Judgment (ECF No. 47).  Plaintiff also filed a Motion to Strike Defendants' Declarations and "Supplemental Pleadings."  ECF No. 74.[1]

        Having reviewed the foregoing, supporting declarations and evidence, and balance of the record, the Court recommends that Plaintiff's motion for summary judgment and motion to strike be denied.  It is further recommended that Defendants' motion to strike be denied and that Defendants' motion for summary judgment be granted.

---

[1] Following the deadline for submission of pleadings related to the parties' summary judgment motions, Plaintiff also filed an "Objection and Response to Defendants' Reply in Support of Cross-Motion for Summary Judgment/Motion to Strike Exhibits" (ECF No. 76) and "Supplemental Reply with Objections to Defendants' Response to Plaintiff's Motion to Strike Defendants' Declarations and Supplemental Pleadings" (ECF No. 77). These additional responses are not authorized and will not be considered.  Local Rule 7(b)(1) – (3).

        Plaintiff also filed a motion for immediate injunctive relief (ECF No. 65) and a motion to continue Defendants' motion for summary judgment (ECF No. 67).  Under separate Order, the request for continuance has been denied and under separate Report and Recommendation, the Court has recommended that the motion for preliminary injunctive relief be denied.

REPORT AND RECOMMENDATION - 1

**SUMMARY OF CASE**

After a revision to Department of Correction (DOC) Policy 590.100, which governs Extended Family Visits (EFV) of prison inmates, offenders who were married after their conviction dates were eligible to apply for EFV.  Mr. Boyd and his wife, who were married in 2000 after Mr. Boyd was convicted, applied for EFV and were approved despite Mr. Boyd's "very extensive criminal history of sex offenses" because Mr. Boyd had no history of domestic violence and had then been married to his wife for nine years.  However, before Mr. Boyd and his wife actually participated in any EFV, the revised criteria for DOC's EFV policy was published.  One of those criteria required Deputy Director approval for EFV of offenders who were approved for EFV after February 27, 2009 and who had "homicide or serious assault charges or convictions."  All facilities were required to re-review in accordance with the new criteria.  Upon re-review of Mr. Boyd's EFV application packet, he was disapproved for EFV.  Prison officials state that this decision was based on Mr. Boyd's serious criminal convictions, which were committed against females, his prison disciplinary record, which included sexual harassment and assault against a female DOC nurse, and his pronounced lack of participation in programming.

Mr. Boyd contends that his application was denied on *re-review* because he and his wife are African American[2]; that another offender's EFV application was approved because his wife is Caucasian; and that he was retaliated against because he had previously filed grievances and a lawsuit against a corrections officer.   Denial of Mr. Boyd's EFV application means that Mr.

---

[2] As noted above, Mr. Boyd's application to have EFV with his wife was originally granted.  Therefore, there is no claim of racial discrimination previous to the denial after re-review.

Boyd cannot have extended overnight visits with his wife. They are not, however, prevented from continuing their regular visits.

## PROCEDURAL BACKGROUND

Mr. Boyd filed his motion for summary judgment on January 24, 2011. ECF Nos. 43-45. On February 11, 2011, Defendants responded to the motion, included a motion to strike materials, and filed a cross-motion for summary judgment. ECF Nos. 46-48. Plaintiff's motion was originally noted for hearing on March 11, 2001 but was continued by the Court to occur after the April 1, 2011 consideration of Plaintiff's motion to compel. ECF No. 55.

On April 18, 2011, the Court granted Plaintiff's motion to compel, in part, and directed Defendants to provide Plaintiff with copies of EFV action forms for MICC offenders whose initial approval for EFV occurred between February 27, 2009 and August 3, 2009, with criminal convictions for violent crimes including murder, rape or assault of any kind against adult females or children. ECF No. 63. The Court defined this criteria for the production based on its determination that documents relevant to proving Mr. Boyd's claim of racial discrimination would be found, if at all, in those EFV applications. The Court also directed the Clerk to re-note Plaintiff's motion for summary judgment (ECF No. 43) and Defendants' cross-motion for summary judgment (ECF No. 47) for May 20, 1011. *Id.* On May 5, 2011, the Defendants filed the "Declaration of Elizabeth Weinandt in Response to Court's Order Granting In Part Plaintiff's Motion to Compel Discovery," with EFV forms for seven offenders. ECF No. 68. Of the seven inmates identified, three participated in an EFV in 2010 – the first inmate is African American with a Caucasion wife; the second is an African American with a Hispanic wife; and, the third is an African American with an African American wife. *Id.*

REPORT AND RECOMMENDATION - 3

## STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the nonmoving party is pro se, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 U.S. 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

REPORT AND RECOMMENDATION - 4

On summary judgment, a court must view all evidence and any inferences therefrom in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996) (citation omitted). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears pro se. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). A court construes a pro se plaintiff's pleadings liberally. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

## MOTIONS TO STRIKE

**A.      Defendants' Motion to Strike (ECF No. 46)**

Attached to Plaintiff's motion for summary judgment are sixty-nine (69) exhibits. ECF No. 44-1 (pp. 1-67) and ECF No. 44-2, pp. 1-61. Defendants contend that with the exception of two of those exhibits (Exhibit 24 at ECF No. 44-1, pp. 37-38 and Exhibit 64 at ECF No. 44-1, pp. 40-43), the remaining sixty-seven exhibits should be stricken because they are not in a "form which could be admissible as evidence under applicable civil rules." ECF No. 46, p. 2, *citing* Fed.R.Civ.P. 56(c)(4); CR 7(g).

The trial judge is compelled by some Ninth Circuit case law to search the record for evidence supporting the position of the pro se litigator. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.2004) ("we must consider as evidence in his opposition to summary judgment all of [the *pro se* plaintiff's] [potentially admissible] contentions offered in motions and pleadings"). The evidence need not be in admissible form, but merely susceptible of being placed in such form at

REPORT AND RECOMMENDATION - 5

trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Aholeli v. Hawaii Dept. Of Public Safety*, 220 Fed. Appx. 670 (9th Cir. 2007). Here, the evidence attached to Plaintiff's complaint includes correspondence, e-mails, and memoranda from the DOC; DOC "Omni" records, records from the Kansas Department of Corrections; Plaintiff's EFV application, grievances and kites, materials relating to DOC actions taken with regard to the EFV applications of other inmates; DOC Offender Management Network Information relating to other inmates; Defendants' answers to discovery, and Mr. Boyd's DOC facility plan and August 2010 Custody Review. The evidence the Defendants seek to challenge appears, in some instances, to be materials produced to Plaintiff in discovery and/or material to which Defendants would also have access. Whether or not it is presently admissible, it could be made so at trial. Accordingly, Defendants' motion to strike (ECF No. 46) is denied.

**B.      Plaintiff's Motion to Strike (ECF No. 74).**

Plaintiff moves to strike the Declarations of Daniel Fitzpatrick (ECF No. 46-2), Ronald Van Boening (ECF No. 46-3), and Richard Morgan (ECF No. 46-4). Mr. Boyd argues that these individuals gave false testimony that an inmate, Roderick Stoudamire was re-reviewed for his EFV, that the stated reasons for approving Stoudamire's EFV application are false, and that Stoudamire was never re-reviewed because his wife is Caucasion and was a representative of MICC Visitor's Committee. ECF No. 74, p. 7.

"A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated ....." Fed. R. Civ. P. 56(e). The declarations at issue were signed under penalty of perjury and the material facts stated therein are on their face within the personal knowledge of the declarants, such as what criteria they used in reviewing EFV applications and what they took

REPORT AND RECOMMENDATION - 6

into consideration in approving or denying certain EFV applications. Mr. Boyd may argue that there is evidence to the contrary. However, the declarations speak for themselves. The Court will determine whether the evidence submitted by the parties has raised a material issue of fact precluding summary judgment. There are no grounds to strike the declarations on grounds that they are false or in violation of any Court order. Accordingly, the motion to strike (ECF No. 74) is denied.

## STATEMENT OF FACTS

**A.      EFV Application Process**

EFV is a privilege available to, but not extended to, all eligible inmates who meet the stringent criteria of the applicable policy and procedures set forth in DOC 590.100. ECF No. 46-2, ¶¶4 and 5 (Declaration of Daniel Fitzpatrick); ECF No. 46-3, ¶4 (Declaration of Ronald Van Boening). Ronald Van Boening, who was the former Superintendent of MICC, explains that the potential security and safety risks posed by any EFV applicant cannot be overstated because EFV provides heightened opportunities for physical assaults, sexual assaults, verbal abuse, coercion, pressure, intimidation, and the entry of contraband. ECF No. 46-3 (Decl. of Van Boening), ¶ 8. Many problems can occur during an EFV visit in a trailer. ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 6. Therefore, DOC takes great care when considering whether to approve offender and visitor applications for EFV privileges. ECF No. 46-3 (Decl. of Van Boening), ¶¶8, 9; ECF No. 46-4 (Declaration of Richard Morgan), ¶6.

Many levels of review and consideration are involved in the EFV application process. ECF No. 46-2 (Decl. of Fitzpatrick), ¶¶4, 7-9, 13, 15-21; ECF No. 46-4 (Decl. of Morgan), ¶14. Superintendent approval is required for all EFV requests. ECF No. 46-3 (Decl. of Van Boening), ¶¶8 and 9; ECF No. 46-4 (Decl. of Morgan), ¶7. All Superintendents are authorized to exclude

REPORT AND RECOMMENDATION - 7

any offender from EFV if, based upon the offender's crime, and his/her current and prior behavior the Superintendent had reason to believe that an offender posed a danger to him/herself, the visitor or the orderly operation of the facility. ECF No. 46-4 (Decl. of Morgan), ¶¶5 and 7; ECF No. 46-3 (Decl. of Van Boening), ¶7; ECF No. 46-1 (Declaration of Patty Willoughby), Attachs. B and C. Since June 2009, a Deputy Director must approve the EFV application packets for offenders with homicide and/or serious assault convictions or charges. ECF No. 46-4 (Decl. of Morgan) ¶10; ECF No. 46-5 (Declaration of Cathy Kopoian), Attach. A; ECF No. 46-3 (Decl. of Van Boening), ¶12; ECF No. 46-2 (Decl. of Fitzpatrick), ¶9.

Prior to February 27, 2009, offenders who were married after their conviction dates were not eligible for EFV. ECF No. 46-2 (Decl. of Fitzpatrick), ¶9; Ex. 1; ECF No. 46-1 (Decl. of Willoughby), Attach. B (DOC 590.100(V)(C)(1), at p. 8); ECF No. 46-1 (Decl. of Willoughby), Attach. E (Guide for Friends and Family, 8/2007 revision, p. 22); Ex. 4; ECF No. 46-4 (Decl. of Morgan), ¶¶7 and 8; ECF No. 46-3 (Decl. of Van Boening), ¶4; ECF No. 48, ¶5 (Declaration of Elizabeth Weinandt). On February 27, 2009, revisions to the EFV policy included both offender and spousal eligibility changes. ECF No. 46-4 (Decl. of Morgan), ¶ 7 (citing ECF No. 46-1 (Decl. of Willoughby), Attach. B (DOC 590.100(V)(A) and (V)(C), respectively). Other eligibility requirements for such inmates and/or their visitors were set forth at DOC 590.100(V) at pp. 4–8. If inmates who were married prior to their conviction and/or their visitors failed to meet the remaining eligibility requirements, such inmates would be ineligible for EFV. *Id.* Both before and after the policy changes of February 27, 2009, offenders could be excluded from participating in EFV by the Superintendent. *Id.*, DOC 590.100 (III)(A) and (D), p. 3. If, based upon the offender's crime and facility behavior record, the Superintendent had reason to believe that an otherwise eligible offender posed a danger to him/herself, the visitor(s), or the orderly

REPORT AND RECOMMENDATION - 8

operation of the facility, the Superintendent was authorized to exclude the offender from EFV. *Id.* at (III)(A) and (D), p. 3.

After February 27, 2009, certain inmates who had been married for more than three years could apply to be considered for EFV. ECF No. 46-4 (Decl. of Morgan), ¶ 8; ECF No. 46-1 (Decl. of Willoughby), Attach. C (DOC 590.100(V)(C)(1) at p. 9). If such inmates and/or their visitors failed to meet the remaining eligibility requirements (set forth at DOC 590.100(V) at pp. 4–9), such inmates would be ineligible for EFV. *Id.* Superintendent approval was still required and could be withheld if the Superintendent had reason to believe that an otherwise eligible offender posed a danger to him/herself, the visitor(s), or the orderly operation of the facility. *Id.* at (III)(A) and (E), p. 3.

The February 27, 2000 DOC 590.100 revisions also specifically excluded offenders with a documented history of domestic violence (DV) from having EFV with: their DV victim(s); persons with the same relationship to the offender as the offender's DV victim(s); other family members at the Superintendent's discretion; and, children if the offender had a documented history of sex or violent offenses against a child. ECF No. 46-4 (Decl. of Morgan), ¶ 9; ECF No. 46-1 (Decl. of Willoughby), Attach. C (DOC 590.11(V)(9) and (10)).

On June 26, 2009, DOC Secretary Vail issued DOC Administrative Bulletin AB-09-020 (AB-09-020) which was to take effect immediately. ECF No. 46-5 (Decl. of Kopoian), Attach. A (DOC Administrative Bulletin AB-09-020, dated June 26, 2009). AB-09-020 instructed that "[o]ffenders with homicide and/or serious assault charges or convictions are not eligible for EFV unless approved by the appropriate Deputy Director." *Id.*, p. 2. Richard Morgan, the former DOC Director of Prisons and Superintendent of the McNeil Island Corrections Center (MICC), directed his Deputy Director to inform all Superintendents that they were required to conduct

"re-reviews" of the EFV approvals for each offender who had been approved for EFV after February 27, 2009. ECF No. 46-4 (Decl. of Morgan), ¶ 11; ECF No. 46-5 (Decl. of Kopoian), Attach. B (Letter from Deputy Director to all Superintendents, dated July 24, 2009). Until the re-reviews had occurred, the EFV of the affected offenders were suspended. *Id.* The decision to conduct re-reviews of the offenders who were newly approved for visits was based upon concern that offenders whose criminal history included homicide or serious assaults had been approved without that criminal history having been reviewed by a Deputy Director prior to EFV approval. As a result, such offenders potentially presented a more significant safety, security and facility risk to the visitors, staff, and the overall orderly administration of the facilities. ECF No. 46-4 (Decl. of Morgan), ¶ 12.

According to Defendant Morgan, all offenders initially approved for EFV after February 27, 2009 were re-reviewed in accordance with DOC 590.100, as revised at AB-09-020. ECF No. 46-4 (Decl. of Morgan), ¶ 13l ECF No. 46-5 (Decl. of Kopoian), Attach. B. As discussed more fully below, Mr. Boyd disputes that the EFV applications of Offender Stoudamire (who has a Caucasian wife) and Offender Williams (who has an African American wife), were ever re-reviewed as required by policy. *See, e.g.,* ECF No. 74, p. 12.

Plaintiff James Boyd (DOC #700291) is a Kansas state boarder who has been incarcerated within Washington DOC facilities since 1992 and currently resides at the Monroe Correctional Complex (MCC). ECF No. 46-1 (Decl. of Willoughby), Attach. A, pp. 1, 5-17; ECF No. 46-2 (Decl. of Fitzpatrick, ¶11). At approximately age 43, Mr. Boyd began serving his eight consecutive sentences of fifteen years to life for each of the following crimes, each committed against female victims: First Degree Kidnapping (two counts); First Degree Rape

(one count); and Indecent Liberties with Forcible Compulsion (five counts). [3] *Id.* (Decl. of Fitpatrick), ¶12.   Because he was married after his conviction, Mr. Boyd was initially not eligible to submit an application for Extended Family Visits.  ECF No. 46-1 (Decl. of Willoughby), Attach. B; ECF No. 46-3 (Decl. of Van Boening), ¶4); ECF No. 46-4 (Decl. of Morgan), ¶7); ECF No. 46-2 (Decl. of Fitzpatrick), ¶¶4 and 5; ECF No. 46-1 (Decl. of Willoughby), Attach. E (DOC Guide for Friends and Family, 8/2007 revision, p. 22).

Gloria Kemp-Boyd and Mr. Boyd were married in 2000.  ECF No. 44-1, at pp.37-38; ECF No. 46-1 (Decl. of Willoughby), Attach. D (copy of a certified copy of the Marriage Certificate between James A. Boyd and Gloria M. Kemp-Boyd).  Mr. Boyd states that prior to their marriage, he and his wife visited (non-EFV) for approximately five years and that since their marriage, they have continued regular visitations (non-EFV), all without negative reports. ECF No. 52, p. 20.

According to Correctional Program Manager (CPM) and MICC Facility Risk Management Team (FRMT) leader Daniel Fitzpatrick, a DOC inmate begins the EFV consideration process by submitting an application to his or her DOC counselor.   ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 7 (*citing* ECF No. 46-1 (Decl. of Willoughby), Attach. B (DOC 590.100 III(A) at p. 10, and Attach. C (DOC 590.100 C III(A) at p. 9).  After the counselor has reviewed the information and ensured that the necessary information is completed, the counselor may forward the EFV "packet", including any visit concerns he or she may have, to the FRMT.  ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 7.  The FRMT then reviews the EFV packet information for

---

[3] The listed crimes represent the Washington State equivalents of the Kansas criminal convictions.  The respective Kansas titles and statutes for each crime are set forth at ECF No. 44-2, pp. 40-43.

completeness and accuracy, then meets with the offender, and reviews the offender's central file. *Id.*

The FRMT also reviews DOC information obtained from its various databases including OMNI, OBTS, and Liberty's LSIR and RMT to review the offender's participation and attendance in FRMT recommended programs, victim characteristics and whether the crimes and offenses were sexual in nature, all in order to determine the appropriateness of EFV for each applicant and their requested visitor(s). ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 8 (*citing* ECF No. 46-1 (Decl. of Willoughby), Attach. B (DOC 590.100 III(A) at p. 10, and Attach. C (DOC 590.100 C III(A) at p. 9). Thereafter, the FRMT and review committee formulate a recommendation which is forwarded to the CPM for review. The CPM may concur with the FRMT recommendations, not concur, or may send the application back to the FRMT for clarification. After the CPM makes his decision, he forwards his recommendation and the EFV packet to the Associate Superintendent. The Associate Superintendent makes a recommendation and forwards all of the information to the Superintendent. ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 8.

Mr. and Mrs. Boyd applied for EFV. ECF No. 46-5, Attach. F (application for offender James Boyd, DOC #700291). When he initially reviewed Mr. Boyd's application in April of 2009, Mr. Fitzpatrick took into consideration that Mr. Boyd was about 43 years old when he began serving eight consecutive sentences of fifteen years to life for two counts of First Degree Kidnapping; First Degree Rape; and five counts of Indecent Liberties with Forcible Compulsion. ECF No. 46-2 (Decl. of Fitzpatrick), ¶¶ 11-12; ECF No. 46-1 (Decl. of Willoughby), Attach. A (Legal Face Sheet, at pp. 3-5). During Mr. Boyd's meeting with the FRMT, Mr. Boyd stated that all victims of his rape, kidnapping and indecent liberties crimes were female. ECF No. 46-2

(Decl. of Fitzpatrick), ¶ 12.  Mr. Fitzpatrick also considered Mr. Boyd's DOC infraction and disciplinary history which included guilty findings for a number of serious infractions including three guilty findings for infractions simultaneously issued for violations of WAS 137-25-030(659) (sexual harassment), WAC 137-25-030 (5060) (threatening another with bodily harm or with any offense against another person, property or family) and WAC 137-25-030 (704) (assault on a staff member).  ECF No. 46-1 (Decl. of Willoughby), Attach. A, p. 18.  Mr. Fitzpatrick then "reluctantly recommended" that Mr. Boyd be approved for EFV despite Mr. Boyd's "very extensive criminal history of sex offenses" because Mr. Boyd had no history of domestic violence and had then been married to his spouse for nine years.  ECF No. 46-2 (Decl. of Fitzpatrick), ¶14; ECF No. 46-5, Attach. F.   On April 13, 2009, Superintendent Van Boening initially approved Mr. and Mrs. Boyd for EFV.  ECF No. 46-5 (Decl. of Cathy Kopoian), Attach. F.

Before Mr. and Mrs. Boyd actually participated in an EFV visit, however, the revised EFV review criteria was published.  ECF No. 46-5 (Decl. of Kopoian), Attach. A.  As noted above, based upon the revised criteria, Mr. Boyd's EFV application packet was required to be re-reviewed because he was among the offenders whose EFV application had been approved after February 27, 2009, and his criminal history included convictions for the serious violent offenses of First Degree Rape and First Degree Kidnapping of females. [4]  ECF No. 46-4 (Decl. of Morgan), ¶13; ECF No. 46-5 (Decl. of Kopoian), Attach. A; ECF No. 46-3, ¶14.

Upon re-review of his EFV application packet, the appointed reviewing counselor and the Facility Risk Management Team (FRMT) both recommended that Mr. Boyd's request for EFV

---

[4] Both First Degree Rape and First Degree Kidnapping are classified as a serious violent offenses under RCW 9.94A.030(44)(vii) and (vi), respectively.   The respective Kansas titles and statutes for each crime are set forth at ECF No. 44-2 (Decl. of Fitzpatrick), pp. 40-43.

privileges be denied. ECF No. 46-2 (Decl. of Fitzpatrick), ¶16; ECF No. 46-3 (Decl. of Van Boening), ¶15. As part of the re-review, Correctional Program Manager (CPM) Fitzpatrick considered that Mr. Boyd was about 43 years old when he began serving his eight consecutive sentences of fifteen years to life. Upon re-evaluation, Mr. Fitzpatrick remained very concerned that offender Boyd continued to minimize the 1996 sexual harassment/assault incident which involved the DOC staff nurse (1996 incident). ECF No. 46-2 (Decl. of Fitzpatrick), ¶18; ECF No. 46-5 (Decl. of Kopoian), Attach. D (Appeal of Major Infraction Hearing to Tana Woods from James A. Boyd, dated April 5, 1996). Mr. Fitzpatrick believed that Mr. Boyd's denial and minimization of the incident suggested that Mr. Boyd lacked self-awareness regarding the incident. Mr. Fitzpatrick stated that this was an additional reason for concern when considering an EFV with a female.[5] ECF No. 46-2 (Decl. of Fitzpatrick), ¶18. Therefore, Mr. Fitzpatrick concurred with the recommendation that Mr. Boyd's request for EFV privileges not be approved. ECF No. 46-2 (Decl. of Fitzpatrick), ¶16; ECF No. 46-5 (Decl. of Kopoian), Attach. C (Extended Family Visit Action form signed on July 30, 2009 by Deputy Director); ECF No. 46-3 (Decl. of Van Boening), ¶16; ECF No. 46-2 (Decl. of Fitzpatrick), ¶¶16 and 21.

Mr. Fitzpatrick and the FRMT also took into consideration Mr. Boyd's complete DOC infraction and disciplinary history, that all of his victims were females, and since his arrival in 1992, had not then participated in the treatment programs recommended by the MICC FRMT

---

[5] Mr. Boyd describes the 1996 incident as follows: "On March 31, 1996, Boyd received a 704-Offender Infraction for assault on a staff member, for touching a female member." ECF No. 44, p. 19, lines 20-21. As noted above, however, Mr. Boyd's prison record included guilty findings relating to the 1996 incident including sexual harassment, assault, and threatening another with bodily harm. ECF No. 46-2, ¶13; ECF No. 46-5, Attach. A; ECF No. 46-1, Attach. A, p. 18.

REPORT AND RECOMMENDATION - 14

(the standardized stress program[6], the victim awareness program, the breaking barriers program, or the sex offender treatment program).  ECF No. 46-2 (Decl. of Fitzpatrick), ¶16.  Mr. Boyd asserts that he "diligently requested to participate in the Sex Offenders Program."  ECF No. 44, p. 7, lines 29-30.  However, the letter offered by Mr. Boyd in support of this contention shows only that in December of 1998, he wanted to be transferred from the Monroe Correctional Center (MCC).  *Id.* (Ex-14).   In that letter, Mr. Boyd sought "the privilege to transfer to the Sex Offenders Program at Twin Rivers" or be transferred back to Kansas for sex offender treatment."  *Id.*  There is nothing further to indicate that Mr. Boyd participated, or made any attempt to participate, in any Sex Offender Treatment Program actually offered to him while in DOC custody.  *Id.*; ECF No. 46-2 (Decl. of Fitzpatrick), ¶16.   In his motion for summary judgment, Mr. Boyd submits certificates indicating that he has completed a Self-Awarness, Self-Study Course in 1998 and a 30-hour course through the Edmonds Community Collete in January 2010.  ECF No. 44-1, pp. 26-27.

Superintendent Van Boening reconsidered Mr. Boyd's EFV application in July 2009.  ECF No. 46-3 (Decl. of Van Boening), ¶¶13-15.  Superintendent Van Boening took into account Mr. Boyd's serious criminal convictions, the fact that his crimes were committed against female(s), his prison disciplinary record which included sexual harassment and assault against a female DOC nurse, his pronounced lack of participation in programming, and the FRMT and CPM's recommendation that Mr. Boyd's EFV application not be approved.  *Id.*  In his judgment, Superintendent Van Boening determined that approving EFV for offender Boyd posed too great a potential risk to the safety and security of staff, and to his spouse based upon his documented history of serious sexual assaults against females, and his lack of programming.  ECF No. 46-3

---

[6] OMNI/OBTS shows that Offender Boyd completed the standardized stress program in January 2010.

REPORT AND RECOMMENDATION - 15

(Decl. of Van Boening), ¶17.   On July 22, 2009, Superintendent Van Boening recommended to the Deputy Director that Mr. Boyd's EFV application be "disapproved/EFV approval be rescinded."  ECF No. 46-3 (Decl. of Van Boening), ¶16; ECF No. 46-5 (Decl. of Kopian), Attach. C.

Mr. Boyd disputes that Defendant Van Boening disapproved his EFV application based on any legitimate concern of safety and security.  Instead, he contends that Defendant Van Boening was angered by grievances and a lawsuit filed by Mr. Boyd against Correction Officer Speers, who was instrumental in getting Mr. Boyd fired from his hospital job.  ECF No. 52, p. 12.  On May 12, 2009, Defendant Van Boening received a report of the grievance staff investigation from Lt. Mark Keller.  ECF No. 44-1, pp. 16-18.  The investigation, in part, concluded that Corrections Officer Speers had not used good judgment in using language that could be perceived as derogatory or culturally offensive and from joking with offenders.  *Id.*, p. 18.

On July 30, 2009, Deputy Director Wright concurred with Superintendent Van Boening's recommendation that Mr. Boyd's EFV be terminated.  ECF No. 46-2 (Decl. of Fitzpatrick), ¶20 and Attach A (Chrono entries regarding Mr. Boyd's EFV application and process); ECF No. 46-5 (Decl. of Kopoian), Attach. C.

An appeal process for offenders who were denied EFV is included in DOC 590.100.  ECF No. 46-4 (Decl. of Morgan), ¶14; ECF No. 46-1 (Decl. of Willoughby), Attachs. B and C at p. 4.  In both the 7/11/07 and the 2/27/09 revisions of DOC 590.100, offenders were required to file their written appeal to the Prisons Deputy Secretary with 30 days of their receipt of a denial.  *Id.*

Mr. Boyd filed a written appeal on August 1, 2009. Until that time, Defendant Morgan states that he was not aware that Mr. Boyd had either made a complaint or filed a lawsuit regarding MICC staff, or that Mr. Boyd and his spouse professed to be African American. ECF No. 46-4 (Decl. of Morgan), ¶16. Director Morgan states that such facts did not bear upon his determination to deny Mr. Boyd's appeal and affirm the decision to terminate his participation in the EFV program. *Id.* Director Morgan's stated decision was based upon the existing EFV policy, Mr. Boyd's violent and extensive crimes against females, and his unfavorable facility infraction record. ECF No. 46-4 (Decl. of Morgan), ¶18; ECF No. 46-5 (Decl. of Kopoian), Attach. E (August 21, 2009, letter to Mr. Boyd from Richard Morgan denying the appeal and affirming the decision to terminate Mr. Boyd's participation in the EFV program). In his August 21, 2009 letter to Mr. Boyd, Director Morgan stated:

> In accordance with changes in the EFV policy, all offenders approved after 2/27/09 were reviewed based on the changes in the policy. Any offender whose criminal history included a homicide, serious assault or violence was reviewed and forwarded to the office of the Deputy Director of Prisons for final review. It was determined during this process that based on the extensive and violent nature of your crimes against women victims, as well as your infraction record while incarcerated, that you were not eligible to participate in the EFV program while incarcerated.

ECF No. 46-4 (Decl. of Morgan), ¶19; ECF No. 46-5 (Decl. of Kopoian), Attach. E.

Offender Roderick Stoudamire, DOC #287492, was also approved for EFV after February 27, 2009. ECF No. 46-2 (Decl. of Fitzpatrick), ¶22; ECF No. 46-3 (Decl. of Van Boening), ¶19. Mr. Boyd asserts that Mr. Stoudamire's EFV approval was not re-reviewed. ECF No. 44, p. 10. However, according to CPM Fitzpatrick, Director Morgan, and Mr. Van Boening, all MICC offenders whose initial EFV approvals occurred after 2/27/2009 were to be

re-reviewed.   ECF No. 46-2 (Decl. of Fitzpatrick), ¶15; ECF No. 46-4 (Decl. of Morgan), ¶13; ECF No. 46-3 (Decl. of Van Boening), ¶14.

Upon re-review of Mr. Stoudamire's EFV application, the MICC FRMT and Mr. Fitzpatrick recommended to the Deputy Director that Mr. Stoudamire be approved for EFV with his spouse because his crimes were committed when he was 15 years old, he had a long history of years of successful participation in FRMT recommended treatment and programming, and had no prison disciplinary history of violations against females.   ECF No. 46-2 (Decl. of Fitzpatrick), ¶24; ECF No. 46-3 (Decl. of Van Boening), ¶19.   According to Mr. Fitzpatrick, both the FRMT and he considered the criminal histories of Mr. Boyd and Mr. Stoudamire to be significantly different from one another.   ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 23.[7]

Mr. Van Boening, CPM Fitzpatrick, and Director Morgan state in their declarations that race was not a factor in the FRMT review of Mr. Boyd's EFV application and had no impact upon his eligibility to participate in the EFV program pursuant to DOC 590.100.   ECF No. 46-3 (Decl. of Van Boening), ¶5; ECF No. 46-2 (Decl. of Fitzpatrick), ¶25; ECF No. 46-4 (Decl. of Morgan), ¶16.   At least one MICC offender who was initially approved for EFV after February 27, 2009, is of African American heritage and is married to an African American spouse, was approved for EFV with his spouse.   ECF No. 48 (Decl. of Weinandt), ¶8.

Elizabeth Weinandt, DOC Corrections Specialist 4 (Visit Specialist) at DOC Headquarters in Tumwater, Washington, sets out in her declaration the processes she used to obtain the names, criminal histories, and race of MICC inmates whose initial approval for EFV occurred between February 27, 2009 and August 3, 2009, with criminal convictions for violent

---

[7] Defendant Morgan has no personal knowledge of either Mr. Roderick Stoudamire or his spouse related to EFV. ECF No. 46-4 (Decl. of Morgan), ¶17.

REPORT AND RECOMMENDATION - 18

crimes including murder, rape or assault of any kind against adult females or children (pursuant to Court's Order ECF No. 63). As noted above, the criterion outlined in the Court's Order is based on a determination that EFV applications relevant to Mr. Boyd's claims (racial discrimination and retaliation by Defendants Morgan and Van Boening for revocation of EFV privileges at MICC after re-review pursuant to AB-09-020), would be limited to all EFV applications granted after February 27, 2009 (and, therefore, subject to re-review pursuant to AB-09-020) until July 2009 (shortly before Mr. Boyd left MICC) with "violent crimes such as murder, rape, assault of any kind against adult females or children." The latter language was suggested by Mr. Boyd and the Court agreed as to its relevance as the disapproval of Mr. Boyd's EFV application on re-review was based, in part, on his serious criminal convictions against female victims. ECF No. 63.

After February 27, 2009, forty-two MICC inmates were *either* already approved *or* newly approved for EFV. Of those forty-two MICC inmates who were approved, fourteen had been approved prior to February 27, 2009 thus were not *initially* approved on or after February 27, 2009. ECF No. 68 (Decl. of Weinandt) p. 1. Of the subject forty-two offender files: fourteen files included forms dated prior to February 27, 2009; two files contained forms dated after August 3, 2009; twelve files had no EFV Action forms dated on or between February 27, 2009 and August 3, 2009; two contained no EFV forms. Ms. Weinandt utilized the Offender Management Information Network (OMNI) to identify the criminal histories of each of the twelve former McNeil Island Corrections Center (MICC) offenders whose file contained EFV Action Forms dated between February 27, 2009 and August 3, 2009. Of those twelve offenders, she was able to determine that seven offenders had criminal convictions for violent crimes including murder, rape or assault of any kind against adult females or children. *Id.*, p. 2.

Ms. Weinandt also accessed OMNI to determine the race claimed by each of the seven former MICC offenders who were initially approved for EFV on or between February 27, 2009 and August 3, 2009, who also had criminal convictions for violent crimes including murder, rape or assault of any kind against adult females or children. Of those seven offenders, she was able to determine that four offenders claimed to be African American, and three offenders claimed to be Caucasian. *Id.* By accessing DOC's Infoport Visiting System (which DOC began to consistently utilize to track EVS in 2010), Ms. Weinandt determined that, of the subject seven offenders' visitors who were identified as wives, two visitors claimed to be African American, three visitors claimed to be Caucasian, and one visitor claimed to be Hispanic. She was unable to determine the race of one visitor. She also determined the victims' gender and age for each of the subject seven offenders by reviewing police reports and/or DOC's Liberty database and/or the offender's Criminal Conviction Record and/or Criminal History Summary. From that database, she determined that one victim was an adult female, one victim was an adult male, two victims were female children, one victim was a male child, one victim was female, age unknown, and one victim was male, age unknown.

Ms. Weinandt provided the following summary of her review of the databases, available EFV records and data of the seven offenders, which includes for each offender (Offenders ONE through SEVEN): (1) his criminal convictions which include violent crimes such as murder, rape or assault of any kind against adult females or children; (2) his victim's gender and whether a child; (3) his relationship to the person(s) with whom he requested EFV; (4) offender's race; (5) wife's race; and (6) date of last EFV, if applicable:

**Offender ONE:** (1) Convicted as an adult of Kidnapping in the First Degree, Rape in the First Degree, and Indecent Liberties; (2) female adult victim with a child present; (3) spouse; (4) African American; (5) African American; and (6) none identified.

**Offender TWO:** (1) Convicted as an adult of Attempted Murder in the First Degree, and Attempted Murder in the Second Degree; (2) adult male victim; (3) spouse; (4) Caucasian; (5) Caucasian; and (6) none identified.

**Offender THREE:** (1) Convicted as an adult of Attempted Child Molestation in the Second Degree, and Communication with a Minor for Immoral Purposes; (2) child victim, female; (3) spouse; (4) Caucasian; (5) Caucasian; and (6) none identified.

**Offender FOUR:** (1) Convicted as a minor of Child Rape in the First Degree; (2) two male child victims; (3) spouse; (4) Caucasian; (5) unknown; and (6) unknown.

**Offender FIVE:** (1) Convicted as a minor of two counts of Assault in the First Degree, and Murder in the First Degree; (2) female victim, age unknown; (3) spouse; (4) African American; (5) Caucasian; and (6) 11/1/2010;

**Offender SIX:** (1) Convicted as an adult of Assault in the First Degree, and drug manufacturing; (2) victim male, age unknown; (3) spouse and daughter; (4) African American; (5) Hispanic; and (6) 5/24/2010*; and*

**Offender SEVEN:** (1) Convicted as an adult of six counts of Child Molestation in the Second Degree, and three counts of Child Molestation in the Third Degree; (2) female child victim; (3) spouse; (4) African American; (5) African American; and (6) 11/8/2010.

*Id.*, pp. 3-4.

Based on information provided to Mr. Boyd, he states that he is Offender One, Mr. Stoudamire is Offender Five, and Ted Williams is Offender Seven. ECF No. 74, p. 10 (Exhs. 1, 4, and 5). Mr. Boyd claims that out of the seven EFV action forms provided by Defendants, only one (his own) verifies that the inmate's application was re-reviewed by Defendant Van Boening. ECF No. 74, p. 11.

REPORT AND RECOMMENDATION - 21

**DISCUSSION**

**A.     Discrimination**

Mr. Boyd contends that he was denied EFV privileges under DOC Policy 590.100 because he and his wife are African-American, while another African American offender with a Caucasian wife (Mr. Stoudamire) was approved for EFV privileges.  ECF No. 35.  Defendants argue that Mr. Boyd has no state-created liberty interest in participation in the EFV program and he has failed to allege a violation of a fundamental right or the existence of a suspect classification because prisoners are not a suspect class.  ECF No. 47, p. 14.  As noted above, however, Mr. Boyd contends that he was denied participation in the EFV program because he and his wife are African-American.

An equal protection claim under the Civil Rights Act, 42 U.S.C. § 1983, requires, as a necessary element, that defendants acted with the intent to discriminate.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998).  To sustain an equal protection claim under 42 U.S.C. § 1983, "one must show intentional or purposeful discrimination."  *Grader v. Lynnwood*, 53 Wn.App. 431, 437, 767 P.2d 952 (1989) (emphasis added), *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894; *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir.1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful discrimination"), *cert. denied*, 375 U.S. 915.  This "discriminatory purpose must be clearly shown since a purpose cannot be presumed." *Grader*, 53 Wn.App. at 437 ( emphasis added ).  Mere evidence of disparate impact on minorities is insufficient. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 256 (1977); *Washington v. Davis*, 426 U.S. 229, 239-40 (1976).

The Equal Protection Clause does not require conditions, practices, and rules at county and state correctional facilities to be identical.  *Cooper v. Elrod*, 622 F.Supp. 373 (N.D. Ill.1985).

REPORT AND RECOMMENDATION - 22

The United States Supreme Court has observed that "showing that different persons are treated differently is not enough without more, to show a denial of Equal Protection." *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 230 (1964). In addition, plaintiff must demonstrate that he was "treated differently ... because [he] belonged to a protected class." *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995) (*citing Divers v. Department of Corr.*, 921 F.2d 191, 193 (8th Cir.1990)).

In support of his claim that he was discriminated against when his EFV application was denied, Mr. Boyd states that MICC did not permit EFV between African American couples. ECF No. 44, p. 10. He offers no evidence for this conclusion. In fact, the record reflects that at least one other African American offender married to an African American woman, "Offender SEVEN", participated in EFV in November 2009. ECF No. 68-0, ¶10; ECF No. 68-1, pp. 35, 41. This evidence indicates that Defendants did not discriminate against African American offenders with African American spouses.

a)      **Ted Williams.**  According to documents submitted by Mr. Boyd, it appears that Offender Seven is inmate Ted Williams, whose EFV application was approved by the MICC Superintendent, not the Deputy Director. *See* ECF No. 74, p. 27 (Exh. 5(a)). It can also be surmised that the African American offender referred to in Ms. Weinandt's first declaration is inmate Ted Williams. Ms. Weinandt states that approval for Mr. Williams' EFV did not require a Deputy Director signature because the offender did not have "either serious assault charges or convictions." ECF No. 48 (Decl. of Weinandt), ¶ 8. However, the EFV Action Form for Offender Seven and Ms. Weinandt's declaration reflect that Mr. Williams was convicted as an adult of six counts of Child Molestation in the Second Degree, and three counts of Child Molestation in the Third Degree. ECF No. 68, p. 4.

REPORT AND RECOMMENDATION - 23

1  This evidence, however, viewed in the light most favorable to Mr. Boyd, does not raise a

2  material issue of fact as to Mr. Boyd's claim of racial discrimination. Even if Defendants treated

3  Mr. Boyd differently from Mr. Williams by not requiring a deputy director signature of Mr.

4  Williams' EFV approval, they did approve Mr. Williams' request for EFV. As Mr. Williams is

5  an African American inmate with an African American wife, it can hardly be argued then that

6  this is evidence of a policy to deny EFV privileges to couples where both partners are African

7

8  American.

9          **b)    Roderick Stoudemire**

10         Mr. Boyd also insists that Mr. Stoudemire's EFV application was not subject to the same

11  re-review as Mr. Boyd's application. In support, he points to Ms. Weinandt's second affidavit,

12  in which proof that his EFV action form was verified, but "no proof was offered that would have

13  verified that Offender Stoudemire was either re-reviewed or not re-reviewed for his EFV;…".

14  ECF No. 74, p. 4. Defendants have provided ample summary judgment evidence that Offender

15  Stoudemire's application was re-reviewed  As a result of AB-9-020, Defendant Van Boening

16  states that he delegated responsibility to MICC Correctional Program Manager Daniel

17  Fitzpatrick for the EFV re-review for all MICC offenders whom Mr. Van Boening had approved

18  for EFV after February 27, 2009. ECF No. 46-3 (Decl. of Van Boening), ¶ 14.  Daniel

19  Fitzpatrick states that he re-reviewed Mr. Stoudemire's EFV application and recommended,

20  along with the MICC FRMT, to the Deputy Director that Mr. Stoudemire be approved for EFV

21  with his spouse because his crimes were committed when he was 15 years old, he had a long

22

23  history of years of successful participation in FRMT recommended treatment and programming,

24  and had no prison disciplinary history of violations against females. ECF No. 46-2 (Decl. of

25  Fitzpatrick), ¶24; ECF No. 46-3 (Decl. of Van Boening), ¶19.  Acccording to Mr. Fitzpatrick,

26

REPORT AND RECOMMENDATION - 24

both the FRMT and he considered the criminal histories of Mr. Boyd and Mr. Stoudamire to be significantly different from one another.   ECF No. 46-2 (Decl. of Fitzpatrick), ¶ 23.

Defendant Van Boening further states that based on the EFV packet, reports and recommendations concerning offender Stoudamire, as well as the fact that all of his crimes were committed while he was a juvenile and that he had engaged successfully in programming, Defendant Van Boening recommended approval of Stoudamire's request for EFV at approximately the same time as he initially approved Mr. Boyd's request for EFV, and then again upon re-review.  ECF No. 46-3 (Decl. of Van Boening), ¶ 19.

Thus, the evidence reflects that Mr. Stoudamire's application was re-reviewed and that his criminal and prison history was not similarly situated to Mr. Boyd's.

### c)      Inmates Kleven and Tran

In his motion for summary judgment, Mr. Boyd also mentions inmates Kleven and Tran, as examples of inmates who were allowed to participate in EFV despite having committed homicide or assault crimes.  ECF No. 44, p. 23.  According to the information attached to Mr. Boyd's motion (an e-mail dated June 7, 2009 from Brandy Yourkoski (DOC) to Kenneth G. Hellman (DOC) and David P. Bustanoby (DOC)), both inmates were approved for EFV after February 27, 2009.  However, the email also indicates that inmate Kleven "needs to be reviewed because he is convicted of Murder" and inmate Tran "needs to be reviewed because he is convicted of Man."  *Id.*  There is no evidence that either of these individuals were reviewed and/or given EFV privileges.  More importantly, there is no evidence that these inmates were similarly situated to Mr. Boyd or were given EFV privileges because they and their spouses were not African American.

### d)    Nathan Brightman

Mr. Boyd argues that inmate Nathan Brightman was allowed to continue EFV after a 90 day suspension from EFV due to receiving a sexual harassment infraction.  ECF No. 44, p. 22.  However, the EFV action form attached to Mr. Boyd's motion reflects that inmate Brightman's EFV approval is for EFV visits with his mother and two sisters.  *Id.*, p. 13.  There is no evidence that this inmate was similarly situated to Mr. Boyd and was given EFV privileges because he and his spouse were not African American.

### e)    Percentage "Evidence" and Other EFV Forms

In his response, Mr. Boyd also states that having only two African American couples approved for EFV when MICC's population consisted of 1,268 inmates with over one-half being African American, "makes a suspect case for Boyd's claim of discrimination."  ECF No. 52, p. 22.  This statement is wholly conclusory and without evidentiary support.  There is no evidence that any or all of MICC's African American inmates applied for EFV or if they did, whether they are similarly situated to Mr. Boyd.

Also attached to Mr. Boyd's summary judgment pleadings are at least 20 EFV forms of various inmates.  The forms are attached with no explanation or evidence that any of these inmates were allowed EFV privileges despite being similarly situated to Mr. Boyd.  For example, (1) Michael Pritchard (attempted murder and assault on elderly woman) was granted EFV with his mother; (2) Howard Nickles (murder and DV assault 4) was granted EFV with his sister, mother and brother; (3) Robert Anderson (DV assault, kidnapping and burglary) was granted EFV with his step-father, mother and sister; (4) Terry Calendret (child molestation) was granted EFV with wife; and (5) Curtis Miles (1st deg rape of child and 2 counts DV) was granted EFV with wife.  *See,* ECF No. 44-4, pp. 2-26; 38-39.

Some of the EFV forms contain an additional signature approval block for the "Deputy Director (for Offenders with Homicide/Serious Assault), while others do not. Thus, it is not possible to determine whether any of the inmates met the criteria for re-review (for homicide/serious assault) and whether they were, in fact, re-reviewed pursuant to AB-09-020. It is not possible to determine the full nature and extent of these other inmates' crimes. The race of the inmate and the race of their visitors is also unknown. Therefore, it is impossible to determine whether any of these inmates are, in fact, similarly situated to Mr. Boyd.

Mr. Boyd also argues that he is the only inmate in the State of Washington who has ever had his rape and kidnapping charges treated as "equal to assaults." As noted above, at approximately age 43, Mr. Boyd began serving his eight consecutive sentences of fifteen years to life for each of the following crimes, each committed against female victims: First Degree Kidnapping (two counts); First Degree Rape (one count); and Indecent Liberties with Forcible Compulsion (five counts). *Id.* (Decl. of Fitpatrick), ¶12. The listed crimes represent the Washington State equivalents of the Kansas criminal convictions. *Id.* The respective Kansas titles and statutes for each crime are set forth at ECF No. 44-2, pp. 40-43 (Kidnapping, Aggravated Criminal Sodomy, and Rape). Mr. Boyd presents no authority or evidence that the his crimes did not include serious assaults on his female victims.

To prove a violation of his rights under the Equal Protection Clause, Mr. Boyd must show actual evidence that the actions of Defendants Van Boening and Morgan were motivated by racial bias. Proof of disparate impact on minorities is insufficient. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis,* 426 U.S. 229, 239-40 (1976).

REPORT AND RECOMMENDATION - 27

The record reflects that upon re-review, Superintendent Van Boening exercised his judgment and his discretion in recommending that Mr. Boyd not be approved for EFV. There is no evidence to indicate that either Defendant Van Boening or Defendant Morgan, who approved Defendant Van Boening's recommendation, acted contrary to the dictates of DOC 590.100 when they processed Mr. Boyd's EFV application. Based upon the information available to those most able to evaluate offender Mr. Boyd's EFV application, the collective conclusion was that he "posed too high a risk for EFV with a female and could present a risk to the orderly administration of the facility" ... and that his "denial and lack of self-awareness" regarding the sexual harassment/assault incident with the female DOC nurse provided "additional reason for concern in the context of an EFV with a female." ECF No. 46-2, ¶¶17-18. Upon re-review of his EFV application, Defendant Van Boening recommended, and Defendant Morgan concurred, that Mr. Boyd be denied EFV based upon: the applicable DOC policies; serious concerns with Mr. Boyd's violent criminal history against a female victim; his facility infraction history which included sexual harassment and assault against a female DOC nurse; pronounced lack of participation in programming; and the recommendations of Mr. Boyd's counselor, treatment team and Correctional Program Manager. ECF Nos. 46-2, 46-3, 46-4; 46-5, p. 18.

In his Declaration, Defendant Morgan has detailed numerous, significant prison security, safety and orderly facility administration bases for his denial of Mr. Boyd's appeal. ECF No. 46-4, ¶¶. Defendant Morgan also expressly stated that consideration of Mr. Boyd's race was not a factor in his decision. ECF No. 46-4, ¶16. In his Declaration, Defendant Van Boening also detailed numerous, significant prison security, safety and orderly facility administration bases for his best judgment decision not to recommend, after re-review, that Mr. Boyd's EFV application be approved by the Deputy Director. ECF No. 46-3, ¶¶ 8, 15, 16 and 18. In response, Mr. Boyd

points to the last fifteen years that he and his wife have visited without incident. However, these visits were not extended family visits, which implicate particular security and safety issues.

Reviewing the summary judgment evidence in the light most favorable to Mr. Boyd, Mr.Boyd has failed to raise an issue of material fact indicating that Defendants' consideration and re-review of Mr. Boyd's EFV application did not follow the same eligibility, process, policies, revisions and considerations as all other DOC offenders who were initially approved for EFV after February 27, 2009. There is no evidence that the denial of Mr. Boyd's application was denied based on his race or his wife's race.[8]

## B.    Retaliation

Mr. Boyd also alleges that Defendants Morgan and Van Boening denied his EFV application because Mr. Boyd filed "a grievance 4/24/09, against his [Van Boening's] correctional officer supervisor who worked at MICC just days after Mr. Boyd was approved for EFV by Defendant Van Boening on 4/13/09." ECF No. 35, p. 6. In that grievance, Mr. Boyd claimed that Correction Officer Speers forced him to open security doors, harassed him despite knowing that his wife was undergoing surgery for cancer, called him a Hebrew slave, and asked Mr. Boyd to shine his shoes. *Id.*, p. 24 (Exh. 9). Mr. Boyd alleges that Mr. Van Boening received a full report of Mr. Boyd's grievance, the supervisor admitted to his misconduct, but Defendant Van Boening issued no punishment for the officer.

---

[8] In at least one exhibit attached to Mr. Boyd's summary judgment pleadings, he claims that he is being discriminated against because he is "married to a black women [sic] who is a Muslim who wants to share our Islamic religious life together in extended family visits. *See, e.g.,* ECF No. 44-1, p. 1. Mr. Boyd makes no claim of discrimination based on religion in his Amended Complaint. There is also no evidence that the denial of extended family visits creates a substantial burden on his ability to practice his religion.

In his response to Mr. Boyd's grievance, Mr. Van Boening stated as follows:

>I have verbally directed C/O Speers to avoid using terms such as Hebrew slave in the future as they may be perceived as being derogatory or culturally offensive.

>C/O Speers did not use good judgment when allowing an offender to operate security door switches regardless of the circumstance.

>C/O Speers should refrain from joking with offenders and allowing them to joke with him.

>I am not able to determine if the offender is initiating it as a retaliatory measure for the officer making him work as alleged. However, C/O Speers has confirmed that some of what is alleged actually occurred.

>As the Superintendent I expect staff to treat offenders with dignity and to remain professional. Officer Speers was reminded of this expectation.

ECF No. 35, p. 24 (Exh. 9).

A plaintiff can establish that his First Amendment rights have been adversely affected by retaliatory conduct only when the plaintiff shows: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). Challenges to institutional restrictions that are asserted to inhibit First Amendment interests must also be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817 (1974).

Mr. Boyd has a clearly established right to be free of retaliation for exercising his first amendment rights. See *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); *Carepartners LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008). There is no dispute that Mr.

Boyd has a right to utilize the grievance process and file lawsuits and that prison authorities may not retaliate against him for doing so. *See, e.g., Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997). However, as explained below, the evidence before the Court does not support Mr. Boyd's claim that any defendant retaliated against him because he was exercising his First Amendment rights.

In order to prevail on a first amendment retaliation claim, a plaintiff must initially show that the protected conduct was a substantial or motivating factor in the defendant's decision. *Carepartners*, 545 F.3d at 877. If the plaintiff makes this initial showing, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. *Id*. To meet this burden, a defendant must show by a preponderance of the evidence that it would have reached the same decision; it is insufficient to show merely that it could have reached the same decision. *Id*.

The intent to inhibit a constitutionally protected right may be demonstrated either through direct or circumstantial evidence. See *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence is sufficient to survive summary judgment motion). For example, in *Hines v. Gomez,* the Ninth Circuit held that circumstantial evidence that an inmate had a reputation for filing grievances and had told a guard that he planned to file a grievance, combined with the jury's rejection of the guard's purported reason for punishing the inmate, "warrants the jury's finding that [the guard] filed the disciplinary report in retaliation for [the prisoner's] use of the grievance system." 108 F.3d at 268.

Mr. Boyd relies primarily on the timing of his grievance as proof of Defendant Van Boening's retaliatory intent. Mr. Boyd filed his grievance against Officer Speers just days after he was initially approved for EFV but before Defendant Van Boening denied his EFV application on re-review.

REPORT AND RECOMMENDATION - 31

Timing can properly be considered as circumstantial evidence of retaliatory intent. See, e.g., *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir.1989). However, timing alone is insufficient to create a genuine issue of material fact regarding retaliatory motive. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). In this particular case, there is nothing other than the timing of Mr. Boyd's grievance to support the inference that the subsequent denial of his EFV application on re-review was retaliatory. Mr. Boyd's EFV privileges were rescinded following re-review of his EFV packet as required under DOC EFV policy changes which occurred after his initial EFV approval. ECF No. 46-5, p. 10. The re-review of Mr. Boyd's EFV application was justified by DOC policy, and the denial of Mr. Boyd's EFV application on re-review was justified by his criminal history and prison record.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Mr. Boyd's claim of retaliation be granted.

**C.     Due Process**

Mr. Boyd claims that his 14th Amendment and State Constitutional right to due process was violated when his EFV was terminated without notice or hearing. ECF No. 35, p. 9. The Court finds that Mr. Boyd has failed to state a cognizable claim under the Due Process Clause of the Fourteenth Amendment. Although prisoners retain those constitutional rights that are not inconsistent with their status or with the legitimate penological objectives of the correctional system, they do not have a right to contact or family visits under the Due Process Clause. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460-61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (holding that the denial of prison access to certain visitors "'is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause'"); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir.2002)

(holding that the right of intimate association, including cohabitation with one's spouse, is necessarily abridged during incarceration and that such loss "is simply part and parcel of being imprisoned for conviction of a crime"); *see also Turner v. Safley*, 482 U.S. 78, 95-96, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," those circumstances are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff was not denied family visitation, but has been denied the privilege of extended overnight visits with his spouse. His inability to do so is an ordinary incident of prison life. *Toussaint v. McCarthy*, 801 F.2d 1080, 1114 (9th Cir.1986) (observing that denial of contact visits "is part of the penalty that criminals pay for their offenses against society"); *see also Sandin*, 515 U.S. at 485-86; *Kentucky Dep't of Corrections*, 490 U.S. at 461.

Thus, even if Mr. Boyd was not given notice or hearing relating to the re-review of his EFV application, his due process rights were not implicated and this claim should be dismissed.

**D.      Improper Legislative Review**

Mr. Boyd claims that DOC AB-098-020-V(A)10 is ineffective because it was not reviewed by the Washington State Legislature as required by House Bill Report-2E1 SHB-c-19L95, and because Defendants Van Boening and Richard Morgan "illegally" permitted an offender's wife (Moira Hennings/O'Crotty) to submit input and help collect data in the formulation of DOC AB-098-020-V(A)10. ECF No. 35, pp. 10-11.

The DOC sets forth policies and procedures to determine who is eligible to participate in the DOC EFV program pursuant to RCW 72.09.490. There is no viable summary judgment

REPORT AND RECOMMENDATION - 33

evidence before the Court upon which a determination can be made that the DOC did not follow statutory dictates in amending their EFV policy.  Accordingly, the undersigned recommends that Mr. Boyd has failed to meet his summary judgment burden on this claim and it should be dismissed.

**E.      Taking Without Just Compensation**

Mr. Boyd claims that he paid $10.00 for a scheduled EFV visit and that he was not reimbursed the $10.00 pursuant to DOC 590.100(J)(2).  He argues that this failure to reimburse constitutes an improper taking of property without just compensation under the Fifth Amendment.  ECF No. 35, p. 13.  Defendants admit that Plaintiff is entitled to reimbursement pursuant to DOC 590.100(J)(2) in effect in February 2009.  ECF No. 36, pp. 8-9.

The takings clause under the Fifth Amendment, which provides that no "private property [shall] be taken for public use, without just compensation," is not applicable here.  The Fifth Amendment "limits the government's ability to confiscate property without paying for it"; whereas the due process clause of the Fourteenth Amendment requires the government to "provide appropriate procedural protections when taking such property- with or without compensation."  *Vance v. Barrett*, 345 F.3d 1083, 1089 (2003) (emphasis added).  The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir.1974).  Whether a deprivation of property rises to the level of a constitutional violation depends on whether the deprivation was negligent or unauthorized.  A negligent deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available because pre-deprivation process is impracticable since the state cannot know when

REPORT AND RECOMMENDATION - 34

such deprivations will occur.  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Similarly, an intentional, but unauthorized, deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available.  *Id*.  The Ninth Circuit has held that an adequate post-deprivation remedy for confiscated property is available in the State of Washington through, for example the Washington State Tort Claims Act.  RCW ¶ 4.92; *Joshua v. Newell,* 871 F.2d 884, 887 (9th Cir. 1989).  Mr. Boyd must, therefore, utilize Washington's post-deprivation remedy in lieu of filing a civil rights claim for return of his $10.00.    As noted above, Defendants admit that Mr. Boyd is entitled to the return of his $10.00.

Accordingly, the undersigned recommends that this claim be dismissed.

**F.      Eleventh Amendment**

Plaintiff is suing the Defendants in their "individual official" capacities.  ECF No. 35, ¶¶ 4-6.  The Eleventh Amendment to the United States Constitution bars citizens from bringing lawsuits against states in federal courts.  *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73, 107 S. Ct. 2941, 97 L. Ed. 2d 389 (1987) (plurality opinion); "[N]either a State nor its officials acting in their official capacities are 'persons' under §1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Id.* (citations omitted); *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

Accordingly, Plaintiff's claims against the named Defendants in their official capacity must be dismissed.

**G.      Washington Constitution**

Mr. Boyd also asserts that Defendants' conduct violated Washington's Constitution. ECF No. 35, p. 5.  However, Washington's Constitution does not provide a cause of action for monetary damages.  *Systems Amusement, Inc. v. State*, 7 Wn. App. 516, 500 P.2d 1253 (Div. II 1972).   A 42 U.S.C. § 1983 claim must be premised upon a violation of federal law, not state law.  *Furfaro v. City of Seattle*, 144 Wn.2d 363, 374, 27 P.3d 1160 (2001).

Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's claims under the Washington Constitution should be granted and those claims dismissed.

**H.      Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. It is not necessary to address Defendants' arguments that qualified immunity should be applied to Mr. Boyd's claims because the undersigned has concluded that Defendants did not violate Mr. Boyd's constitutional rights.

**CONCLUSION**

For the reasons stated above, the undersigned recommends that Defendants' motion for summary judgment (ECF No. 30) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

matter for consideration on **July 8, 2011,** as noted in the caption.


            DATED this  16th  day of June, 2011.


                                                    _Karen L. Strombom_
                                                    Karen L. Strombom
                                                    United States Magistrate Judge

REPORT AND RECOMMENDATION - 37